IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | Civil Action No.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY TRIAL DEMAND** |
| SOFTPRO, LLC., | |
| Defendant. | |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended through the ADA Amendments Act of 2008 ("ADA"), and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Matthew Elliott ("Elliott"), who was adversely affected by such practices. The Equal Employment Opportunity Commission (the "Commission") alleges that Defendant SoftPro, LLC ("SoftPro") terminated Elliott on the basis of perceived disability and/or record of disability, in violation of the ADA.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

1

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina, Western Division.

## PARTIES

3. Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant, a Delaware corporation, has continuously been doing business in the State of North Carolina and the city of Raleigh. At all relevant times, Defendant has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## CONDITIONS PRECEDENT

7. More than thirty days prior to the institution of this lawsuit, Elliott filed a charge with the Commission alleging violations of the ADA by Defendant.

8. On August 22, 2017, the Commission issued to Defendant a Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the

Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide it the opportunity to remedy the discriminatory practices described in the Determination.

10. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. On September 6, 2018, the Commission issued a Notice of Failure of Conciliation to Defendant.

12. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13. As more fully described below, beginning on or about February 21, 2017, Defendant engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112(a), when it terminated Elliott's employment because of a perceived disability and/or because of his record of disability.

14. Elliott is a former opiate addict. Prior to voluntarily seeking addiction treatment, Elliott was dependent on opioids for approximately four years. Addiction interfered with various major life activities of Elliott. Such major life activities included Elliott's regular sleep patterns, ability to eat regularly and proper functioning of his gastrointestinal system, including nausea. Additionally, addiction had other physiological and psychological effects on Elliott, such as excess sweating and mood changes.

15. Between approximately 2009 and 2017, Elliott underwent physician-supervised medication-assisted treatment ("MAT").

16. Elliott's MAT program included the use of legally prescribed and dispensed methadone to eliminate opiate cravings and reduce or eliminate withdrawal symptoms. Elliott's treatment through the MAT program was monitored, including through regular drug screening and recurring counseling appointments.

17. In or around July 2015, Elliott began working for Defendant in a contract IT Support position.

18. In or around December 2015, Elliott began working for Defendant in a permanent full-time IT Support position.

19. During his employment, Elliott was assigned to the Tier 3 team which was responsible for unique or difficult IT troubleshooting and other IT issues for employees, customers, and clients of Defendant.

20. Throughout his employment, Elliott met his employer's legitimate performance expectations.

21. Throughout his employment, Elliott met the objective qualifications of his position.

22. Throughout his employment, Elliott complied with the requirements of the MAT program and did not relapse.

23. Throughout his employment, Elliott never used illicit drugs.

24. In or around February 2017, Elliott took approved vacation leave from work.

25. During his approved vacation leave in February 2017, Elliott voluntarily admitted himself to an in-patient treatment facility to eliminate his need for medication-assisted treatment, and specifically, to stop taking methadone for treatment. Elliott successfully completed the in-patient program.

26. Since completing the in-patient program in mid-February 2017, Elliott has not required medication-assisted treatment nor experienced a relapse of addiction.

27. On or about February 21, 2017, Elliott returned to work.

28. On the day he returned to work, Elliott performed his usual job duties at or above his employer's legitimate expectations, including successfully closing approximately ten IT service tickets.

29. On the afternoon of February 21, 2017, Defendant's Vice President of Customer Advocacy/Support Services ("Vice President") questioned Elliott about the purpose of his leave.

30. In response to the Vice President's questions, Elliott disclosed that he had a previous drug addiction, that he had been in rehabilitative medication-assisted treatment for several years, and that during his leave he had participated in a treatment program to eliminate his need for ongoing medication.

31. On February 21, 2017, Elliot requested leave for the next day to be with his father while his father received medical care. Elliot's request was approved.

32. A short while later on February 21, 2017, Defendant contacted Elliott and told him to work remotely on Thursday February 23, 2017 and Friday February 24, 2017.

33. Between February 22, 2017 and February 27, 2017, Defendant's Chief Customer Officer, Vice President of Customer Advocacy/Support Services, and Human Resources Manager discussed the status of Elliott's employment.

34. Upon information and belief, the decision to terminate Elliott's employment was made by Defendant's Chief Customer Officer, Vice President of Customer Advocacy/Support Services, and Human Resources Manager.

5

35. On February 27, 2017, Defendant's Human Resources Manager and Vice President of Customer Advocacy/Support Services informed Elliott that his employment was terminated.

36. On February 27, 2017, Defendant presented Elliott with a Rehabilitation Agreement which informed Elliott that he would be terminated.

37. The Rehabilitation Agreement further provided that if Elliott signed it, he could retain his employer-provided health insurance for up to 45 days and enroll in Defendant's Employee Assistance Program or a similar rehabilitation program.

38. At all relevant times, Elliott was qualified to perform the essential functions of the IT Support position which he had held for over a year at the time Defendant terminated him.

39. Defendant terminated Elliott because he had participated in a medication-assisted treatment program.

40. At all relevant times, Elliott had a record of a disability as defined in 42 U.S.C. § 12102.

41. At all relevant times, Defendant regarded Elliott as having a disability based on Elliott's use of legally dispensed methadone and/or Elliott's participation in a medication-assisted treatment program.

42. Defendant terminated Elliott because of a perceived disability and/or because of his record of disability in violation of the ADA.

43. The effect of the practices complained of above has been to deprive Matthew Elliott of equal employment opportunities and otherwise adversely affect his status as an employee because of his record of disability and being regarded as having a disability.

44. The unlawful employment practices complained of above were intentional.

45. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Matthew Elliott.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from any employment practice that discriminates on the basis of disability.

B. Order Defendant to amend its employment policies and practices to accord with Title I of the Americans with Disabilities Act of 1990, as amended through the ADA Amendments Act of 2008.

C. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

D. Order Defendant to make Matthew Elliott whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Elliott or front pay in lieu thereof.

E. Order Defendant to make Matthew Elliott whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above, in amounts to be determined at trial.

F. Order Defendant to make Matthew Elliott whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above,

including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in amounts to be determined at trial.

G.  Order Defendant to pay Matthew Elliott punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

H.  Grant such further relief as the Court deems necessary and proper in the public interest.

I.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this the 27th day of September, 2018.

Respectfully submitted:

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
131 M Street, NE
Washington, DC 20507

/s/ *Lynette A. Barnes*_____
LYNETTE A. BARNES (NC Bar 19732)
Regional Attorney

YLDA MARISOL KOPKA
Supervisory Trial Attorney

/s/ *Holly Stiles*_____
HOLLY STILES (NC Bar 38930)
Trial Attorney
Raleigh Area Office
434 Fayetteville Street, Suite 700
Raleigh, N.C. 27601-1701

Phone: (919) 856-4148
Fax: (919) 856-4151
E-mail: holly.stiles@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**